# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-61823-CIV-MORENO/TORRES

EDWIN MATOS

      Petitioner,

v.

STATE OF FLORIDA

      Respondent.

_____/

## REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO TITLE 28 U.S.C. § 2254

This matter is before the Court on Edwin Matos' Petition for Writ of Habeas Corpus pursuant to title 28 U.S.C. § 2254 [D.E. 1, 6].[1]  The State of Florida ("Government") responded [D.E. 11].  The Court has carefully reviewed the voluminous record and the arguments presented, including the each of the prior proceedings and trial transcript in the underlying criminal case, *Florida v. Matos*, No. 02-15762 (Fla. 17th Jud. Cir.), aff'd, 899 So.2d 403 (Fla. 4th DCA 2005).  For the reasons that follow, we recommend that the Petition for Writ of Habeas Corpus be **DENIED**.

---

[1]     Pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the above-captioned cause was referred to the undersigned magistrate judge to take all necessary and proper action as required by law regarding Petitioner's Petition of Writ of Habeas Corpus.

## I.  BACKGROUND

### A.    *Facts in the Record*

Very early on the morning of August 17th, 2002, approximately12:55 a.m., the Petitioner was driving westbound along Johnson Street, a two-lane residential street in Broward County, Florida, with a posted speed limit of 30 (thirty) miles per hour. The Petitioner was driving his Pontiac Trans-Am, which had been recently modified into a more powerful version known as a Pontiac "Firehawk."  Witnesses who lived in the area could see and hear the vehicle coming.  One described it roaring like a jet plane.  Others said it was going so fast it sounded like a race car.  Almost all of them described a vehicle traveling down the street at a very high speed, well over the posted speed limit.  One witness who saw the vehicle believed it was traveling 100 miles per hour or more.(T. 223, 237, 281, 303).[2]

Sadly, Petitioner was not the only one driving on Johnson Street at the time. A Mitsubishi vehicle occupied by two sixteen-year old girls, Jamie Maier and Paige Kupperman, was parking in the 9500 block of Johnson Street at the home of a friend. Some of those friends were there too at the home that had quite recently been re-sodded with new grass over an area where cars often parked.  So the driver, Jamie, heard a request to back up and park on the other side of the driveway.  Without getting out of the car, she reversed and began backing up to maneuver the vehicle to the other.

As she began pulling out, she stopped when another vehicle, approaching from the opposite direction as Petitioner, was traveling down the road.  That vehicle was not

---

[2]      Citations to the trial transcript of *State v. Matos*, 02-15762, included in the appendix filed in this proceeding.

racing down the street at an excessive speed; it observed the Mitsubishi and swerved around it to proceed down the street.  But as the occupants of the Mitsubishi were looking the other way, the Petitioner was barreling towards them from the opposite direction.  Tragically, Petitioner never had time to even hit the brakes.

Unable to swerve around the Mitsubishi backing out of a driveway, Petitioner's car violently collided with the passenger side of the Mitsubishi.  The force of the Petitioner's Pontiac launched the Mitsubishi into the air and off the road, onto a parked car and tree, and turning it over onto its roof.  The Mitsubishi and landed sideways against the tree, over two hundred feet away from the point of impact.  The Petitioner's Pontiac also took a tree out and ended up resting hear a house.  Witnesses who saw the crash described it as an explosion, with debris, car parts, and glass shooting up and down the street.

The vehicle had severe damage on both the passenger and driver side.  The roof of the car was smashed in.  There was massive intrusion into the driver's side from the passenger's side of the vehicle.  The right front passenger's seat was pushed over into the driver's seat.  The pillars of the vehicle on the passengers were totally deformed, crushed to within 28 inches of the left side of the vehicle (as opposed to the normal 67-inch width of the Mitsubishi).  The entire frame of the car was crushed and severely deformed.  The physical damage was consistent with a severe high-speed impact.

The physical injuries to the two occupants of the vehicle were also consistent with an extreme high-speed crash.  Although both were wearing their seat belts, and were found still attached to the belts hanging down towards the left side of the car as the vehicle laid on its side, each of them was essentially crushed to death by the impact

of the Petitioner's vehicle and the massive intrusion of that vehicle into the occupant area of the Mitsubishi.  Each had multiple contusions, abrasions, lacerations, to the head and torso.  Each suffered multiple broken bones, including severe skull, facial and pelvic fractures.  The medical examiner testified that those massive external injuries were consistent with a severe automobile crash.

The internal injuries were fatal.  Jamie Maier suffered multiple brain hemorrhages on the surface and interior portions of the brain.  She suffered a laceration of her brain stem and the upper cervical spinal cord.  She had massive internal injuries to her torso, including lacerations of the lungs, liver, spleen, kidney, and pancreas.  Those injuries were not survivable.

Similarly, Paige Kupperman had extensive trauma on her head and torso consistent with blunt force impact.  She had severe hemorrhaging of the brain, a laceration of the brain stem, hemorrhaging of the chest cavity, bruised lungs, lacerated liver, spleen and kidney, and a complete transection of her aorta.  Again, non-survivable injuries.  When both victims were extricated from the vehicle, they had little or no pulse.  Both were rushed to the hospital, where efforts were made to save them, but they were declared dead within one hour of the collision.

According to the testimony of two expert witnesses, Officer John C. Baker of the City of Pembroke Pines Police Department, and Mr. Donald Felicella of Felicella Consulting Engineers, the Petitioner "was traveling very much in excess of the speed limit" (T 381), at a conservatively estimated speed of 80 (eighty) miles per hour (T 538) at the time of the crash.  To determine the Petitioner's speed, experts relied upon traditional means of accident reconstruction, corroborated by data collected from the

Sensing and Diagnostic Module (SDM)/ Event Data Recorder (EDR) of the Petitioner's Pontiac.[3] That evidence, which was vetted at a pretrial hearing by the trial judge, and considered by the jury at trial, showed that the vehicle was reaching speeds in excess of 100 miles per hour at the time of the impact with the other vehicle.

### B.    *Procedural History*

The Petitioner was charged with two counts of manslaughter, and two counts of vehicular homicide.  Before his trial, the State gave notice that it intended to introduce evidence obtained from the Petitioner's vehicle's SDM/EDR, to which the Petitioner's counsel filed a written objection.  The trial court held a hearing pursuant to the holding of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and the court determined that the evidence was admissible under Florida law. The Petitioner also filed a number of pretrial motions in limine and to suppress evidence.  The trial court granted the Petitioner's in limine motion with respect to the accident report, and suppressed the results of the Petitioner's blood test.

A jury trial was held from May 12 through May 16, 2003, after which the Petitioner was found guilty of two counts of manslaughter and two counts of vehicular homicide, although the trial court held the vehicular homicide counts in abeyance.  On June 13, 2003, the Petitioner was sentenced to serve two concurrent sentences of thirty (30) years in the Florida Department of Corrections.  The sentence was severe not just

---

[3]    The SDM/EDR is essentially similar to the "black box" data recording systems used in airplanes.  It collects basic data such as speed, tire rotation, and seatbelt usage in a car during the moments before a crash.  The SDM and EDR are connected to the airbag system. While the EDR simply records data, the SDM analyzes raw acceleration data in order to determine whether or not the airbags should be deployed.

from the deaths of the two victims that resulted from Petitioner's reckless conduct but also his prior criminal history (consisting of various fraud and grand theft offenses).

The Petitioner timely appealed his convictions and sentences to the Florida Fourth District Court of Appeal, and on March 25, 2005, his conviction was affirmed. The Petitioner then sought review from the Florida Supreme Court. However, on September 12, 2005, the Florida Supreme Court declined to accept jurisdiction and denied the petition for review.

On January 17, 2006, the Petitioner filed a *pro se* motion for the writ of habeas corpus in the Florida Fourth District Court of Appeal. His petition was denied on the merits on April 16, 2006, and a rehearing was denied on June 13, 2006.

On February 23, 2006, Petitioner filed a *pro se* motion for post-conviction relief in the trial court under Rule 3.850 of the Florida Rules of Criminal Procedure, which was summarily denied on February 29, 2008. On March 13, 2008, the Petitioner filed a motion for a rehearing, which was denied on April 28, 2008. On May 8, 2008, the Petitioner filed a motion for reconsideration of the April 28, 2008 decision, which was denied on June 4, 2008.

On June 20, 2008, the Petitioner filed a notice of appeal through counsel. On November 26, 2008, the appellate court affirmed the trial court's denial in a *per curiam* decision with no written opinion. Subsequent motion for rehearing were denied, and a mandate was issued on January 30, 2009.

On November 13, 2009, the Petitioner filed a petition for federal habeas corpus relief in this court, which was amended and supported in a motion by counsel on

January 16, 2010.[4]   The State responded in opposition to the Petition.  The Court considered whether an evidentiary hearing was required on the Petition, but the Court's extensive review of the state court proceedings below and the trial record shows that no evidentiary hearing was warranted and the matter may be adjudicated on the existing substantial record.

## II.   ANALYSIS OF PROCEDURAL ISSUES

### A.   *Exhaustion*

The issues in this case have been properly exhausted in state court, and therefore this petition my be considered by the Court.

An application for a federal writ of habeas corpus will not be granted unless the applicant has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1), (c).  To satisfy the exhaustion of state court remedies requirement, a claim must be presented to the highest court of the state.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Reutter v. Sec'y for the Dept of Corr.*, 232 Fed. Appx. 914 (11th Cir. 2007).  A petitioner is required to present his claims to the state courts so those courts are afforded the opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim.  *Picard v. Connor*, 404 U.S. 270 (1971).  State prisoners must give the state courts one full opportunity to resolve any constitutional

---

[4]     The procedural history is based on the Court's review of the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. 2254 [D.E. 1], and both the Petitioner's and the Government's briefs [D.E. 6, 11, 23].  The Court also contacted the Broward County Clerk of Courts to review additional docket entries made during the time period between February 29, 2008 and June 20, 2008.  Since neither party made note of any other time periods in contention for AEDPA tolling purposes, the Court did not inquire further.

issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last result, even if review in that court is discretionary. *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (citing *O'Sullivan*, 526 U.S. at 845).

While exhaustion is ordinarily accomplished on direct appeal, in Florida it may also be accomplished by the filing of a Rule 3.850 motion and an appeal from its denial. *See, e.g., Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. Fla. 1979). In Florida claims of ineffective assistance of trial counsel cannot be raised on direct appeal and must be raised pursuant to Rule 3.850. *E.g., McClain v. State*, 629 So.2d 320 (Fla. 1 DCA 1993). Claims of ineffective assistance of appellate counsel must be raised by petition for writ of habeas corpus in the appropriate state district court of appeal. *See* Fla. R. App. P. 9.141(c)(2).

Applying these standards to Matos's petition, it is evident that Petitioner has properly exhausted his state remedies. The docket of the Florida Fourth District Court of Appeal demonstrates that the Petitioner appealed the trial court's denial of his Rule 3.850 motion, and the Petitioner's claims have been exhausted in state court.

Therefore, the issues raised in this case have been properly exhausted in state court, and  Matos' petition my be considered by the Court, but only they were timely raised here.

### B.    *Timeliness*

Though the issues raised have been procedurally exhausted with the state courts, this petition has not been timely filed as required by the Antiterrorism and

Effective Death Penalty Act (AEDPA).  Under AEDPA, a defendant has one year from the date his state court conviction becomes final to bring a federal habeas corpus petition, but time is tolled when properly filed applications for post-conviction relief are pending in state court.  104 P.L. 132 §101(d)(1)(A)-(2).

For § 2254 purposes, a conviction becomes final once a petition for certiorari has been denied, or the time period to file a petition of certiorari has elapsed.  *E.g., Bond v. Moore*, 309 F.3d 770 (11th Cir. 2000).  United States Supreme Court Rule 13 requires a petition for writ of certiorari to be filed within 90 (ninety) days of the date of the entry of the judgment, rather than the issuance of the mandate.

Under these guidelines, Petitioner's judgment of conviction and sentence became final on December 11, 2005, ninety (90) days after the Florida Supreme Court declined to accept jurisdiction following his direct appeal.  Thirty six (36) days afterwards, his time under the AEDPA tolled when he filed a *pro se* petition for a writ of habeas corpus to the appellate court on January 17, 2006.  It remained tolled through February 29, 2008,[5] at which point the statute again resumed running once again.  It ran for thirteen (13) days until March 13, 2008, when the Petitioner presented a motion for a rehearing with the trial court.

On April 28, 2008, the statute began running again when the Petitioner's motion was denied, but the clock stopped ten (10) days later when the Petitioner filed a motion

---

[5]    During this period, the Petitioner also filed a Rule 3.850 motion with the trial court.  Although the appellate court habeas petition entered final judgment on June 13, 2006, the date of the trial court's decision is controlling.  We will also not consider, as we could, whether the filing of the pro se post-conviction "appeal" with the appellate court was a "properly filed" application.  We doubt it is, but given the discussion that follows it is inconsequential.

for reconsidering the order denying the rehearing, on May 8, 2008.  The trial court denied the motion on June 4, 2008, and the statute ran for an additional sixteen (16) days until June 20, 2008, at which point the Petitioner filed a Notice of Appeal in the Florida Fourth District Court of Appeals.  Time was again tolled for AEDPA purposes.

The denial of this motion was affirmed on November 26, 2008, and mandate issued on January 12, 2009.  At that point, Petitioner's AEDPA "clock" began ticking again.  So far, Petitioner had used seventy five (75) of his allotted 365 days.  With two hundred and ninety (290) days remaining, the Petitioner had until October 29, 2009 to file a petition with this court.  However, the Petitioner filed on November 13, 2009, fifteen (15) days *after* the statute of limitations had run.

As Petitioner filed fifteen (15) days outside of the AEDPA requirements, his petition has not been timely filed.  The Petition may thus be Denied in its entirety on this basis alone as no showing has been made why equitable estoppel would apply either to toll the statutory calculation of the one-year period.  We will, nevertheless, proceed to consider the merits of the Petition in an abundance of caution and in the event our timeliness calculation is incorrect.

### III.   ANALYSIS OF SUBSTANTIVE ISSUES

#### A.   *Applicable Legal Principles*

##### 1.   *Standard of Review Under Section 2554*

This Court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if it is claimed that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2554(a).  A district court may not grant a petition challenging a state

condition or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

Clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state court decisions. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (citing *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000)). A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or if a state court unreasonably extends or declines to extend a legal principle from Supreme Court case law to a new context. *Id.* In other words, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Breedlove v. Moore,* 279 F.3d 952 (11th Cir. 2002).

28 U.S.C. § 2254(e)(1)-(2) provides that a federal court must presume correctness of the State's factual findings, unless a petitioner is able to rebut the presumption with clear and convincing evidence.  Further, § 2254(e)(2) limits the circumstances in which a district court should conduct evidentiary hearings.  An AEDPA-governed case requires the court to apply a highly deferential standard for reviewing state court judgments.  *See, e.g., Parker v. Sec'y for Dep't of Corr.,* 331 F.3d 764, 768 (11th Cir. 2003); *Fugate v. Head*, 261 F.3d 1206 (11th Cir. 2001); *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2000) (AEDPA restrains the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in a state court, "in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law.").

Matos asserts claims on grounds that he is in custody in violation of the Constitution, specifically claiming violations of his Fifth, Sixth, and Fourteenth Amendment rights.  Matos presents claims of ineffectiveness of counsel, prejudicial conduct of the state, deprivation of his right to confront its accuser, and double jeopardy.

### 2.  *Review for Ineffective Assistance of Counsel*

Claims of ineffective assistance of counsel are examined through the two-part test adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffective assistance of counsel, Petitioner must establish (1) that his attorneys' performance fell below an objective standard of reasonableness, under prevailing professional norms, and (2) but for the deficient performance of his attorneys, there is a reasonable probability that the result

of the proceeding would have been different *i.e.*, "a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see, e.g., Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).  To succeed on a claim of ineffective assistance, a habeas petitioner must satisfy both prongs of this *Strickland* test.  *E.g., Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004).

As a result, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been.  *Strickland*, 466 U.S. at 697 (holding that court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one.");  *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

And, in reviewing a state court's judgment of an ineffective assistance claim, the state court need not cite to, or even be aware of, Supreme Court precedent, so long as its decision is not inconsistent therewith.  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Mitchell v. Esparza*, 540 U.S. 12, 17, 124 S.Ct.7, 157 L.Ed.2d 263 (2003).  Thus, to prevail on his ineffective assistance of counsel claims, Matos must show that the state court incorrectly applied the *Strickland* standard in reaching its determination that the claims raised in his state habeas petition lacked merit.

### B. *Ineffective Assistance of Counsel Claims*

The first ground for Petitioner's ineffective assistance of counsel claim is that "counsel did not appreciate the complexity of the science underlying Black Box technology in spite of the fact that the Prosecution was attempting to introduce data

retrieved therefrom as substantive evidence of Matos' car's speed." This section is subdivided into separate grounds; 1A - 1I. The Court will address each in turn.

### 1.

Ground 1A of the Petitioner's ineffective assistance of counsel claim argues that counsel should have retained a competent black box expert sooner than the eve of trial, and should have instructed the expert to undertake a full examination of Matos's Pontiac after providing the expert with relevant discovery data. But even if this perceived failure were to fall below an objective standard of reasonableness, Matos's assertion fails to satisfy the prejudice prong of the *Strickland* test.

Had counsel retained an expert earlier, and had the hypothetical difference in timing proved the SDM/EDR reading of 114 m.p.h. to be incorrect, there is still no showing that the outcome of the proceeding would have been any different. The state court relied upon much more than the SDM/EDR reading to determine the Petitioner's speed, using evidence gleaned from traditional means of accident reconstruction, scientific formulas, and extensive witness testimony. The prosecution's experts *conservatively* estimated the Petitioner's speed to be around 80 m.p.h, which was 50 m.p.h. above the posted speed limit.

Further, the defense's own expert estimated Matos' speed at almost 60 m.p.h, or almost *double* the posted speed limit. Given that the crash occurred at night on a two-lane residential street, and given the severity of the physical damage caused by the impact, the jury had substantial evidence to find that the Petitioner was traveling recklessly, well in excess of the speed permitted by state law, and in a manner that risked great bodily injury or death. Any changes in SDM/EDR data would not have

had a definitive effect over the rest of the physical evidence, which clearly supports the jury's finding that Petitioner had been traveling at an unacceptably high rate of speed at the time of his crash.

Finally, even if we agreed that the decision to retain an expert late in the pretrial phase of the case fell below professional standards, in the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in *Brecht v. Abrahamson,* 507 U.S. 619 (1993). The test is "less onerous" than the harmless error standard enunciated in *Chapman v. California,* 386 U.S. 18, (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht*, 507 U.S. at 637.  That showing has not been made with respect to the decision to present the rebuttal expert.

## 2.

Likewise, Ground 1B of the Petitioner's ineffective assistance of counsel claim fails for a lack of showing of actual prejudice.  Ground 1B alleges that defense counsel failed to recognize the effects the SDM/EDR would hold over the case, claiming that the State "purposely tainted the jury" by including the SDM/EDR data.  This fails the second prong of *Strickland* because it again fails to take into account all the other sources of evidence that proved the Petitioner was driving recklessly at the time of his crash.  While the SDM/EDR reading likely had an effect over the jury's decision, it cannot be held wholly separate from the rest of the evidence.  All of these pieces of

evidence were brought before the jury, and there is nothing save the Petitioner's conclusory statements to posit that the SDM/EDR was weighed disproportionately during the jury's deliberations.  Because the Petitioner fails to prove prejudice, he does not meet his burden under *Strickland*.

Petitioner forgets, for instance, that traditional accident reconstruction evidence presented at trial fully supported the jury's finding.  For instance, the State's expert explained that the speedometer on Petitioner's vehicle was found to be in the far right position at the 150 mile per hour mark.  That means that when power was lost on the vehicle after the collision the needle slipped to the right side.  It thus had to be to the right of the twelve o'clock position when power was lost, which equates to at least 80 miles per hour. So as the point of impact approached, the vehicle had to be traveling at least 80 miles per hour.  (T 537-38). That physical evidence fully supported the expert's opinion, apart from the SDM/EDR data, that the vehicle was traveling at least 80 per hour, a finding that would fully support the jury's manslaughter verdicts.  This is in addition to the evidence of injury to the occupants, which was so horrendous that a reasonable jury could find had to have resulted from an extreme high-speed impact, rather than the 50 to 60 mile per hour impact that Petitioner's expert posited.

Again, the Petitioner cannot show prejudice under the *Strickland* test on this basis.

### 3.

Ground 1C of the Petitioner's ineffective assistance of counsel claim also fails the prejudice prong of *Strickland*.  1C reads: "Faulty interpretation yields faulty conclusions - garbage in, garbage out," and claims that counsel's failure to note that

recent changes to the size of the Pontiac's tires would have lead to incorrect SDM/EDR readings.  However, the Petitioner fails to affirmatively prove this claim on the record presented.  The experts testified that the tire size *may* have had an effect on the SDM/EDR, but did not know for certain.  But apart from that, this claim falls short of *Strickland*'s prejudice prong for the same reasons outlined above: The SDM/EDR was not the only piece of evidence that lead to the Petitioner's conviction, and even if it had been proven that the device registered a faster speed than the Pontiac's actual speed of travel, there was still a large volume of evidence proving that his speed and driving pattern were reckless for the area at that time of night.

### 4.

Ground 1D fails the prejudice prong of the *Strickland* test for the same reasons discussed in our analysis of Grounds 1A-C.  Ground 1D alleges that a Hyper Tech calibration machine and a tank of nitrous oxide contained in the Petitioner's trunk at the time of the crash, along with a report documenting that the car was performing incorrectly a few days before the accident, coupled with discrepancies between the SDM/EDR reading and the experts' own calculations, are all "red flags" indicating that the SDM/EDR was not functioning properly at the time of the crash, and that its speed was therefore inaccurate.  Our independent analysis of the record shows, however, that counsel's cross examination of the State's expert delved indepthly into various factors that undermined the reliability of the SDM/EDR readings.

But in any event, Ground 1D clearly fails to demonstrate that this alleged ineffectiveness of counsel would have lead to a reasonable probability of a difference

in the outcome of the proceeding if the SDM/EDR data were to have been removed from evidence.

*5.*

Ground 1E of Petitioner's claim of ineffective assistance of counsel asserts that "counsel failed to evaluate crucial photographic evidence which would have established that the automobile had been tampered with while in the state's custody," and goes on to describe that the windows of the Petitioner's Pontiac were in different positions in various photographs.  While these discrepancies might provide some fodder for cross examination to raise questions or suspicions, the claim falls short of establishing the prejudice prong of *Strickland*.  The Petitioner does not show that the outcome would have been different had counsel specifically challenged the evidence due to photographs depicting the Pontiac's windows in different positions.

Furthermore, the Pontiac had just been recovered from a serious car accident that resulted in two fatalities, where both automobiles suffered substantial physical damage.  Therefore, it is quite possible that the windows may have been opened or closed in order to reach different parts of the Pontiac's interior for inspection after the crash.  That the same window was positioned differently in separate photographs does not prove that the government was tampering with the evidence, especially since no other indications of tampering were found at any other time throughout the case. Therefore, Ground 1E fails because it does not meet the burden of proving prejudice under *Strickland*.

*6.*

Ground 1F of the Petitioner's ineffective assistance of counsel claim also fails to demonstrate prejudice.  Here, the Petitioner claims that counsel's failure to view the scene of the accident, or view the wrecked automobile until the day before trial, left him unable to properly confront the State's evidence.  However, the Petitioner fails to link counsel's decision not to view the scene of the crash, or view the car sooner, to his alleged inability to respond to the evidence.  In this case, Counsel's decision not to view the accident scene or the wreckage had zero influence over the outcome because there was so much evidence supporting a conclusion that the Petitioner was driving recklessly.  Since defense counsel did not claim to hold any qualifications as an expert accident re-constructionist, a mathematician, or scientist, his presence at the accident scene would not have produced any evidence or information to help his client's defense.  The expert counsel retained certainly investigated the scene and the evidence of the wreckage, which supported the expert's testimony for the defense that the vehicle was traveling less than 60 miles per hour.  How counsel's personal presence at that investigation would have mattered is not at all made clear by the Petition.

In short, Ground 1F fails to establish in any way how counsel's decisions regarding  if and when to view the wreckage and accident scene had any effect whatsoever on his ability to confront the State's evidence.  Indeed, counsel's cross examinations were thorough and pointed.  The defense's failure at trial lied elsewhere, not with counsel's supposed inability to confront the evidence.  Therefore the second prong of *Strickland* is again not met.

*7.*

Ground 1G of the Petitioner's ineffective assistance of counsel claim asserts that "counsel was ineffective when he failed to investigate or to adequately cross examine crucial eye witness Lopez on his many felony convictions." However, the trial record utterly refutes this claim. During his examination, Pedro Lopez actually admitted that he left the scene of the accident because he had a warrant on his license (T 308), and he was repeatedly questioned about whether any promises had been made to him in exchange for his testimony. Lopez repeatedly answered in the negative, and also admitted to a criminal history that included a prior felony and active drug trafficking (T 309-310).

Ground 1G repeats these challenges on Lopez's credibility, but fails to demonstrate how specifically admitting "to the entirety of his felony convictions on the stand" would have lead to a reasonable probability of a different outcome for this case. After all, Lopez was one of many witnesses who testified as to the reckless nature of the Petitioner's vehicle as it barreled down that street late at night. Some even referred to it by analogy as the roar of a jet. Lopez's testimony was in part cumulative of this other testimony. No prejudice can be established on this basis.

*8.*

Ground 1H of Petitioner's claim of ineffective assistance of counsel is also refuted by the record, and also fails to demonstrate prejudice. Ground 1H posits juror misconduct, claiming that "jurors were seen to be sleeping during the testimony," that "one juror was seen conversing in the hall," and "one juror was seen reading a newspaper." However, the record demonstrates that the trial court appropriately dealt

with the situation when presented, and further, that no jurors were reading articles about the case or discussing the case with family members of the accident victims. The trial record shows that the juror who had been falling asleep was an alternate (T 515). It also reflects that the jurors had not discussed the case amongst themselves or with anyone else, read about the case in the newspaper, watched reports about it on television, or turned to any electronic media for information about the case (T 518). No error has been shown in any way as to the trial court's handling of the jury issues or in counsel's presentation of those issues.

### 9.

Ground 1I of the Petitioner's claim of ineffective assistance of counsel alleges that "counsel was ineffective in failing to adequately preserve his request for additional voire dire after it was learned that one juror was untruthful about his knowledge of the case." However, Ground 1I also fails to demonstrate prejudice. The pertinent juror later admitted that he knew one of the prosecutors, but assured that his knowledge would not affect his verdict. The juror's assurance that his verdict would be unaffected demonstrates a lack of prejudice, and therefore Ground 1I fails the second prong of the *Strickland* test for ineffective assistance of counsel.

### 10.

Grounds 2 and 3 are related. Ground 2 of the Petitioner's ineffective assistance of counsel claim charges that "defense counsel rendered fatally prejudicial assistance of counsel in failing to provide reciprocal discovery of documents which would have established that Matos' automobile had been modified." Ground 3 of the Petitioner's claim of ineffective assistance of counsel maintains that counsel was ineffective in

presenting the defense's sole expert witness, noting that a defense discovery violation precluded crucial SDM/EDR evidence from being introduced at trial.

But in both cases even if the Petitioner were able to prove that this performance fell below an objective standard of reasonableness, he again still remains unable to demonstrate prejudice to obtain any relief on habeas review.   These challenges continue to target the credibility of the SDM/EDR reading, but do not address the rest of the compelling evidence the state relied upon to calculate Matos's speed and recklessness.  The modifications to Matos' car had no direct effect on his speed, and an overwhelming amount of physical evidence demonstrated that  Matos was driving his Pontiac well outside the realm of reasonably safe conditions.  Therefore, Matos fails the second prong of the *Strickland* test because he does not prove that the outcome of the proceeding would have been any different.

Similarly, the Ground 3 claim is centered squarely upon the SDM/EDR readings, but the case was decided upon much more than this one piece of data.  The standard for *Strickland*'s prejudice prong is "but for counsel's deficient performance, there is a reasonable probability that the result of the *proceeding* would have been different."  In Ground 3, the Petitioner argues that his ability to present this particular piece of evidence was prejudiced by counsel's mistake, but the pertinent issue instead concerns whether there was a reasonable probability that the outcome of the *trial* would have changed.  As the SDM/EDR device was not the only piece of evidence the jury could rely upon in reaching their verdict, and where there is no indication that the SDM/EDR carried a disproportionate level of importance to the jury, the Petitioner is again unable to demonstrate prejudice.  The jury could indeed have discounted the

weight to give to the computer evidence and relied simply upon the extent of the physical damage, the time of night when Petitioner was racing down the street as all the witnesses testified, and the extent of the physical injuries to the victims as compelling and persuasive evidence of recklessness.

### 11.

Ground 4 of the Petitioner's ineffective assistance of counsel claim charges that counsel was ineffective for not "contacting or presenting" the Petitioner's auto mechanic as a witness, even though the Petitioner requested that he do so.  However, Ground 4 not only fails to demonstrate the prejudice required by *Strickland*, but also fails to prove even relevance.  The Petitioner alleges that his mechanic was prepared to testify that the Pontiac sometimes would "flood out" when it drove over 92 m.ph., and that the car's computer might register speeds of about 40-50 m.p.h. over the car's actual speed.  Even if these claims proved true, the Pontiac would have been traveling a minimum speed of 54 - 64 m.p.h, or still about *double* the legal speed limit. Therefore, the Petitioner again fails to demonstrate a reasonable possibility that the outcome of the proceedings would have been different.  Further, the Petitioner does not address how this would have affected the rest of the physical evidence proving the Petitioner's excessive speed.

### 12.

Ground 5 of the Petitioner's claim of ineffective assistance of counsel states that counsel failed to pursue a reasonable legal defense as directed by the Petitioner. Specifically, Ground 5 claims that this failure prejudiced the Petitioner by failing to have the trial court consider evidence proving that the SDM/EDR was registering the

wrong speed.  However, as stated many times above, counsel presented a whole host of challenges and objections to the reliability of the SDM/EDR evidence.  And again, the SDM/EDR was not the only piece of evidence demonstrating the Petitioner's speed, nor was it necessarily the most convincing piece of evidence.  Physical evidence supported by witness testimony proved  that the force of the Petitioner's Pontiac was powerful enough to lift the victims' Mitsubishi into the air and cause it to land against a tree, on its side, over 200 feet away.  Disproving the 114 m.p.h. reading on the SDM/EDR would not have a significant effect on the rest of the evidence, or the outcome of the trial. Therefore, even if counsel's performance fell below an objective standard of reasonableness, the outcome of the proceeding would likely have remained the same, or at least Petitioner has not shown compellingly that it would have been different.

### *13.*

Ground 6 of the Petitioner's claim of ineffective assistance of counsel is refuted by the record.  While the Petitioner asserts that counsel was ineffective for failing to challenge the manslaughter charges, the record demonstrates that counsel moved for an acquittal on all charges.  Counsel argued that the State had "not proven the elements either of vehicular homicide or *manslaughter*," (T 861) (emphasis added), specifically arguing that the State had failed to meet its burden of proving that the Petitioner had met the "willful or wanton" requirement of either vehicular homicide or manslaughter.  (T 862).

Moreover, even if counsel's motion for judgment of acquittal is considered inadequate to satisfy the performance prong of *Strickland*, the Petitioner has failed to

demonstrate that he was prejudiced.  The Florida appellate courts affirm the denial of motion for judgment of acquittal when the verdict is supported by competent, substantial evidence.  *See Fitzpatrik v. State*, 900 So. 2d 495, 507 (Fla. 2005).  If a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt based upon the State's evidence, there is sufficient evidence to sustain a conviction.  *Id*.  Under the legal standard, it is clear that the verdict would be upheld.  There was an overwhelming amount of physical evidence and witness testimony to support the jury's verdict, and therefore, prejudice to the Petitioner has not been shown.

### 14.

Ground 7 of the Petitioner's ineffective assistance of counsel claim states that counsel was ineffective when he requested that the trial court delete the jury instruction regarding justifiable homicide and excusable neglect.  However, the Petitioner once again cannot demonstrate prejudice because the underlying facts of the case did not support justifiable homicide or excusable neglect, and therefore the jury could not have relied upon either instruction.  *See, e.g, Pena v. State*, 901 S.2d 781 (Fla. 2005) (holding that it is not error for a trial court to fail to instruct a jury on justifiable homicide when the facts do not support such an instruction).  A jury charge is considered adequate if it fairly and correctly states the issues and the law, when viewed as a whole.  *United States v. Russell*, 717 F.2d 518, 521 (11th Cir. 1983); *United States v. Bosby*, 675 F.2d 1174, 1184 (11th Cir. 1982).  Finally, where the error alleged is an incomplete or omitted instruction, a habeas corpus petitioner bears an especially heavy burden because an incomplete or omitted instruction is less likely to be

prejudicial than an overt misstatement of the law. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Ground 7 of the Petitioner's claim of ineffective assistance of counsel therefore fails based on the inability to demonstrate prejudice.

### C.  *Prosecutorial Misconduct Claims*

The second section of the Petitioner's claim posits that "misconduct by the state of Florida resulted in a denial of United States constitutional rights to confrontation, due process, and presentation to the jury solely of evidence upon which it may credibly rely." However, the claims fail to demonstrate any sort of prejudice or bolster their assertions with clearly established existing law.

### *1.*

Ground 2A asserts that the State's decision not to present the CDR System report in its entirety deprived the Matos of his right to due process. This contention is not supported by the record. The Petitioner's attempt to couch his SDM/EDR allegations in terms of due process fails for the same reasons outlined above. The jury was presented the testimonies of three expert witnesses, along with multiple eyewitness accounts, that all agreed that the Petitioner was exceeding the speed limit by at least 25 miles per hour at 1:00 a.m. on a two-lane residential street. The Petitioner therefore has failed to show any misconduct, and has failed to show how such alleged misconduct affected the outcome of his trial.

### *2.*

Ground 2B of the petitioner's claim "posits the likelihood that omission of the complete report can be established as a failure to provide *Brady* or *Giglio* material," but makes no arguments, and cites no cases, to supplement his statement. Therefore,

the claim is dismissed, because bare ad conclusory statements are insufficient to require further consideration by this Court. *See Ferguson v. United States*, 699 F.2d 1071 (11th Cir. 1983); *Fonseco v. United States*, 2011 U.S. Dist. LEXIS 63723. As this Court has discussed in the past, in order to obtain relief a petitioner must put forward a reason for a court to find that a denial of a federal right has occurred. *Paul v. Wainright*, 657 F. Supp. 45, 47 (S.D. Fla. 1986). Where a petitioner has given the court no basis for relief at all, a habeas petition is properly denied. *Id*. Therefore, since ground 2B of the petitioner's claim fails to rise to the level of an argument, and is stated with insufficient specificity to warrant relief, it must be denied.

### 3.

Likewise, Ground 2C fails to rise to the level of an argument, and is stated with insufficient specificity to warrant relief. Ground 2C claims that "the state's case was rife with hearsay in violation of the United States' confrontation clause," but neglects to point out when or where. Stating only that "the trial of Edwin Matos was a prime example of the problems inherent in accepting non-challenged hearsay before a jury," without giving the Court any explicit examples of non-challenged hearsay, is insufficient and must be denied.

### 4.

Ground 2D is refuted by the record. The Petitioner makes the claim that "the state tainted the entire jury process by producing evidence that was both prejudicial and unreliable,"and suggests that expert witnesses represented that his Pontiac was traveling in excess of 100 m.p.h. In fact, the record demonstrates that expert witnesses testified to their own calculations made by hand, which ranged from about 57 m.p.h.

to between 80 - 98 m.p.h.   These calculations were made independently of the SDM/EDR reading, and challenges to their reliability frequently and fervently raised before the jury.  No showing of ineffectiveness or prejudice has been made.

### *5.*

Ground 2E is also refuted by the record.  The Petitioner claims that "the State permitted its chief witness Lopez to lie about his prior felony record," and that the jury accepted Lopez' testimony over the testimony of two other eye witnesses at the scene. The record presents no indication that the jurors preferred Lopez' testimony over the testimonies of other witnesses.  The record does, however, demonstrate that Lopez admitted to having a warrant on his license (T 308), and to having a prior felony record (T 309-310), and that he was forthcoming about his pertinent criminal history.  Finally, it should be noted that Lopez was by no means a "chief witness," but rather stood as one of many eye witnesses to the car crash.  Again no showing has been made in this regard to justify habeas relief of a binding state court judgment.

### D.   *State Court Evidentiary Rulings*

The third section of the Petitioner's claim alleges that "the trial court rushed the trial when it was obvious that a crucial defense expert witness could not timely perform or complete his evaluation."  Ground 3A of his claim is refuted by the record, which indicates that the defense expert witness testified at length, and seemed confident in giving his own calculations, and contrasting them to the speeds reached in the State's experts' calculations.  No prejudice has been shown in any way from the trial court's scheduling Orders.

Petitioner forgets also that this issue concerns the admissibility of evidence and trial scheduling, which are generally not cognizable in a § 2254 federal habeas petition. Where a claim of constitutional magnitude is lacking, the federal court in the habeas corpus context will not review a state trial court's actions concerning the admissibility or presentation of evidence. *See, e.g., Cargill v. Turpin,* 120 F.3d 1366, 1375 (11th Cir.1997) (citing *Alderman v. Zant,* 22 F.3d 1541, 1555 (11th Cir. 1994); *Osborne v. Wainwright,* 720 F.2d 1237, 1238 (11th Cir.1983)).

The same holds true for Ground 3B that claims that the State's usage of SDM/EDR data violated his rights under the Confrontation Clause of the United States Constitution.  The Confrontation Clause does not require the exclusion of "non-testimonial" hearsay that falls within a firmly rooted exception to the rule excluding hearsay. *Desue v. State*, 908 So.2d 1116 (Fla. 1st DCA 2005); *see also Crawford v. Washington*, 541 U.S. 36, 68 (2004) (explaining that "where non-testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law").  No showing has been made that any evidence was presented that went beyond traditional hearsay rulings.

Finally, Ground 3C of the Petitioner's claim should likewise denied.  While the Petitioner contends that the trial court should have determined whether he concurred with his lawyer's decision to forgo a jury instruction on justifiable homicide, based on the facts of the case, the Petitioner was not entitled to such an instruction, because the trial judge was not obliged to give such an instruction.  No showing has been made that constitutional error resulted from the Court's jury instruction determinations.

## IV.  CONCLUSION

For the reasons stated above, it is hereby **RECOMMENDED** that Matos's Petition for Writ of Habeas Corpus by a Person in State Custody [D.E. 1, 6] be **DENIED** in its entirety.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States Chief District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings herein.  *R.T.C. v. Hallmark Builders, Inc.* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 74 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers in Miami, Florida, this 19th day of July 2012.

EDWIN G. TORRES
United States Magistrate Judge