UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 09-61823-CIV-MORENO

EDWIN MATOS,

    Petitioner,

vs.

STATE OF FLORIDA,

    Respondent.
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Edwin Matos ("Matos") filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") on November 13, 2009 more than one year after his state court conviction became final. The Court finds that the petition was not timely filed, but in any event denies the petition on its merits for the reasons indicated in Magistrate Judge's Report and Recommendation (D.E. No. 24), which this Court adopts after conducting an independent review of the record.

## FACTUAL BACKGROUND

In the early hours of August 17, 2002, Petitioner Edwin Matos Petitioner was driving westbound on Johnson Street, a two-lane, residential street in the Pembroke Pines area of Broward County, Florida. Petitioner was driving a Pontiac Trans-Am which had been modified to increase the Trans-Am's standard 325-horsepower engine to 450 horsepower. (D.E. No. 24 at 2). *Id.* The posted speed limit was 30 miles per hour. *Id.*

At about 12:55 A.M., Petitioner's Trans-Am struck the side of a Mitsubishi automobile occupied by two teenagers, Jamie Maier and Paige Kupperman, who were backing out of a friend's driveway. *Id.* According to one eyewitness, Petitioner's automobile "plowed directly into Jamie's car, picked it up, spun it around, tossed it about two houses down in[to] [a] neighbor's yard[.]" (Trial Transcript at 235).

Both girls were killed as a result of the collision, which was described by one witness as, "Just like kind of like a missile going right into the car. Debris going everywhere." (Trial Transcript at 250). An expert for Respondent testified that based on the position of the speedometer needle after the crash, Petitioner's car had to be traveling between 80 and 98 miles per hour at the time of the crash (Trial Transcript at 538). Petitioner's expert witness testified that Respondent's calculations were wrong, and that based on his own calculations, the Trans-Am was traveling 56.91 miles per hour at the time of the impact (nearly twice the posted speed limit). (D.E. No. 24 at 10).

## TRIAL

Petitioner was initially charged under Florida law by information with two counts of Driving Under the Influence-manslaughter (Unlawful Blood Alcohol Level); two counts of manslaughter; two counts of vehicular homicide; and three counts of Driving Under the Influence-property damage. (D.E. No. 15-3 at 2). Prior to trial, the information was amended, after the results of a blood alcohol test performed on Petitioner after the crash were excluded by the state trial court. *Id.* at 42. Petitioner was tried for the two counts of manslaughter and the two counts of vehicular homicide. *Id.* at 45-48. Prior to trial, the State served its notice of intent to introduce evidence retrieved from an Sensing and Diagnostic Module (SDM)/ Event Data Recorder (EDR) recorder device ("SDM/EDR").[1] (D.E. No. 15-3 at 12). A review of Florida case law indicates that, despite the commonness of these onboard computer devices (most late-model, air bag-equipped cars contain them[2]), this is the first time the admissibility

---

[1] The SDM/EDR is similar to the flight data recorder or "black box" systems found in commercial aircraft. It collects basic data such as speed, tire rotation, and seatbelt usage in a car during the moments before a crash. The SDM and EDR are connected to the airbag system. While the EDR simply records data, the SDM analyzes raw acceleration data in order to determine whether or not the airbags should be deployed. *See* Gabler, H. C.; Hampton, C. E.; Hinch, J. 2004. *Crash severity: a comparison of event data recorder measurements with accident reconstruction estimates.* Rowan University, Glassboro, NJ../ National Highway Traffic Safety Administration, Washington, DC. 8 p. Accident reconstruction 2004. Warrendale, SAE, 2004, p. 81-88. Report No. SAE 2004-01-1194. UMTRI-9809 *available at* http://www-nrd.nhtsa.dot.gov/pdf/nrd-01/esv/esv18/cd/files/18ESV-000490.pdf.

[2] In August 2006, the National Highway Traffic Safety Administration (NHTSA)established a regulation that set forth requirements for data elements, data capture and format, data retrieval, and data crash survivability for event data recorders (EDRs) installed in light vehicles. On December 7, 2012, the NHTSA issued a notice of proposed rulemaking which would establish a new safety standard mandating the installation of EDRs in most light vehicles manufactured on

of such evidence was considered in Florida. *Matos v. State,* 899 So. 2d 403, 405 (Fla. 4th DCA 2005) (admissibility of SDM/EDR evidence under *Frye* standard is a question of first impression under Florida law). The SDM/EDR data put Petitioner's speed at between 100 and 114 miles per hour. (D.E. No. 15-3 at 13). Much of Petitioner's argument focuses on the admission of the SDM/EDR evidence which, Petitioner alleges, was inaccurate and therefore unreliable given the extensive modifications made to his vehicle. (D.E. No. 32 at 3-4, 12-15, 16-18).

Petitioner's trial counsel objected to the admissibility of this evidence and the trial court held a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); (D.E. No. 15-3 at 29). As discussed further below, Petitioner claims that trial counsel understood neither the nature of this evidence nor the potential impact on the jury, and that counsel failed to adequately contest the admissibility of the SDM/EDR evidence, both during the *Frye* hearing and during the course of trial. Over the objections of Petitioner's counsel,[3] the trial court determined the evidence was admissible under Florida law. (D.E. No. 15-3 at 21, 39).

Petitioner proceeded to jury trial and was found guilty of two counts of manslaughter and two counts of vehicular homicide on the remaining charges. (D.E. No. 15-3 at 45-48). The trial court held the vehicular homicide counts in abeyance, and sentenced Petitioner to thirty years in the Florida Department of Corrections as an habitual offender. (D.E. No. 15-3 at 61).

## PROCEDURAL HISTORY

Petitioner timely appealed his convictions and sentences to the Florida Fourth District Court of Appeal which affirmed Petitioner's conviction in a written opinion. *Matos v. State,* 899 So.2d 403 (Fla. 4th DCA 2005). Petitioner then took his case to the Florida Supreme Court. On September 12, 2005, the

---

or after September 1, 2014. *See* National Highway Traffic Safety Administration,, December 7, 2012, *Notice of Proposed Rulemaking*, 49 CFR Part 571, Docket No. NHTSA-2012-0177.

[3] Petitioner's counsel filed a number of additional pretrial motions in limine and to suppress evidence. For example, the trial judge granted counsel's in limine motion with respect to the accident report, and suppressed the results of Petitioner's blood alcohol test, which showed a blood alcohol level of .12g/100ml. (D.E. No. 15-3 at 13).

Florida Supreme Court declined to accept jurisdiction and denied the petition for review. *Matos v. State*, 912 So.2d 1217 (Fla. 2005) (Table, NO. SC05-887).

On January 17, 2006, Petitioner filed a *pro se* petition for writ of habeas corpus in the Florida Fourth District Court of Appeal. (D.E. No. 24 at 9). This time, he argued, that his appellate counsel was ineffective for failing to argue that his right to a public trial had been denied when friends and family were excluded from trial proceedings during the charge conference and the reading of the jury instructions. (D.E. No. 15-7 at 18). His petition was denied on the merits on April 16, 2006 and rehearing was denied on June 13, 2006. (D.E. No. 24 at 6).

On February 23, 2006, Petitioner filed a *pro se* motion for post-conviction relief in the state trial court under Rule 3.850 of the Florida Rules of Criminal Procedure. *Id*. On February 29, 2008, the trial judge summarily denied Petitioner's motion. *Id*. On June 20, 2008, Petitioner, through counsel, filed a notice of appeal in the Florida Fourth District Court of Appeal. (D.E. No. 24 at 9). On November 26, 2008, the appellate court affirmed the trial court's denial in a per curiam decision with no written opinion. *Id*. at 10. Subsequent motions for rehearing were denied, and mandate issued on January 30, 2009. *Id*. On November 13, 2009, Petitioner filed a petition for federal habeas corpus relief in this Court. (D.E. No. 1).

Magistrate Judge Torres concluded that Matos' Petition was not timely filed as required by the Antiterrorism and Effective Death Penalty Act, which requires a defendant to bring a federal habeas corpus petition within one year of his *state* court conviction becoming "final." 28 U.S.C. § 2244(d)(1)(A). After finding that Petitioner filed fifteen (15) days outside of the AEDPA requirements, Magistrate Judge Torres determined that the Petition was not timely filed. Magistrate Judge Torres further found that "no showing has been made why equitable estoppel would apply either to toll the statutory calculation of the one-year period." (D.E. No. 24 at 10).

Importantly, Magistrate Judge Torres nevertheless elected to consider this Petition on its merits out of an abundance of caution. *Id*. Because Petitioner contests the Report and Recommendation's

timeliness calculation, this Court also examines the Petition on its merits.

## DISCUSSION

Petitioner sets forth claims of ineffective assistance of counsel, prejudicial prosecutorial misconduct on the part of the state, violation of his right to confront his accuser and double jeopardy. Magistrate Judge Torres' Report and Recommendation considered and disposed of each of these claims in turn. This Court agrees with the conclusions set forth in the Report and Recommendation and rejects all of Petitioner's claims, including the allegation that defense counsel's failure to prevent the admission of the SDM/EDR data as substantive evidence of Matos' vehicle's speed violated Petitioner's constitutional rights. (D.E. No. 6 at 3).

The state trial court's decision to admit the "black box" evidence at issue and the subsequent appellate court opinion affirming it did not involve an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. Nor were these decisions based on unreasonable determinations of the evidence by the state court. Recognizing that a court's evidentiary rulings are typically not cognizable in a § 2254 federal habeas petition, Matos makes an ineffective assistance of counsel claim. This Court agrees with Magistrate Judge Torres' Report and Recommendation concluding that even if trial counsel's conduct fell below an objective professional standard, the admission of the contested evidence did not prejudice Petitioner in a manner which would warrant habeas relief.

### *Ineffective Assistance of Counsel*

Claims of ineffective assistance of counsel are examined through the two-part test adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel, Petitioner must establish (1) that his attorney's performance fell below an objective standard of reasonableness, under prevailing professional norms, and (2) but for the deficient performance of his attorneys, there is a reasonable probability that the result of the proceeding would have been different i.e., "a probability sufficient to undermine confidence in

the outcome." *Id.* at 694. To succeed on a claim of ineffective assistance, a habeas petitioner must satisfy both prongs of *Strickland* test. *See, e.g., Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004).

As a result, once a court decides that one of the requisite showings has not been made, it need not decide whether the other prong has been satisfied. *Strickland*, 466 U.S. at 697 (holding that court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one"); *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("[I]f a defendant cannot satisfy the prejudice prong, the court need not address the performance prong."). And, in reviewing a state court's judgment of an ineffective assistance claim, the state court need not cite to, or even be aware of, Supreme Court precedent, so long as its decision is not inconsistent therewith. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). Thus, to prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court incorrectly applied the *Strickland* standard in reaching its determination that the claims raised in his state habeas petition lacked merit.

### *The SDM/EDR Evidence*

Petitioner's ineffective assistance of counsel claim is predicated on the theory that counsel did not effectively contest the admissibility of the SDM/EDR data in spite of the fact that the prosecution was attempting to introduce it as substantive evidence of his car's speed. In his memorandum in support of the habeas petition, Matos divides the ineffective assistance of counsel claim into several separate grounds; 1A - 1I, each of which exhaustively addresses the damage allegedly done by the admission of the SDM/EDR evidence. Magistrate Judge Torres' Report and Recomendation addresses each claim in turn, ultimately finding that Petitioner failed to show that the outcome of the proceeding would have been any different had counsel for Petitioner further discredited the reading provided by the SDM/EDR device. (D.E. No. 24 at 14-21). The Petitioner delves into several arguments about the nature of the evidence itself, all of which go to the trial court's, and subsequent appellate court's, determination about admissibility of the evidence, neither of which is cognizable in a § 2254 federal habeas petition. (D.E. No. 24 at 29) (citing *Cargill v. Turpin*, 120 F.3d 1366, 1375 (11th Cir.1997) (internal citations omitted)).

In addition, the Report and Recommendation rightly concludes that the trial court relied upon much more than the SDM/EDR reading to determine the Petitioner's speed, using evidence gleaned from traditional means of accident reconstruction, scientific formulas, the extent of the damage to the vehicles involved, the injuries sustained by the victims and extensive eyewitness testimony. (D.E. No. 24 at 14). The prosecution's experts conservatively estimated the Petitioner's speed to be around 80 m.p.h, which was 50 m.p.h. above the posted speed limit. (Trial Transcript at 538). Further, the defense's own expert estimated Matos' speed at almost 60 m.p.h, or almost double the posted speed limit. (D.E. No. 24 at 10). Given that the crash occurred in the middle of the night on a two-lane residential street, and given the severity of the physical damage caused by the impact, the jury certainly had sufficient evidence to find that the Petitioner was driving in a reckless manner that risked great bodily harm or death.

The Report and Recommendation similarly dismisses Petitioner's claims that counsel's failure to exclude the "black box" evidence was disproportionately prejudicial to the Petitioner because the SDM/EDR evidence effectively "tainted" or inflamed the jury. (D.E. No. 6 at 3). Assuming, once again, that trial counsel's performance at times fell below objective standards of reasonableness, Petitioner cannot satisfy the "prejudice" prong of the *Strickland* test. Put another way, even if Petitioner were able to establish that his attorney's performance was substandard under prevailing professional norms, he cannot show a reasonable probability that the result of the proceeding would have been different given the weight of the evidence in this case. Under the case law interpreting *Strickland*, we need not address the performance prong. *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("[I]f a defendant cannot satisfy the prejudice prong, the court need not address the performance prong.")

Several traditional sources of evidence demonstrated the Petitioner was driving recklessly at the time of his crash. While the SDM/EDR reading likely had some impact on the jury's decision, there is no showing that this particular piece of evidence had the kind of inflammatory effect that Petitioner suggests. In a case where (1) eyewitnesses testified that Petitioner's car sounded like a jet engine, (2) the State's accident reconstructionist placed Petitioner's speed at between 80 and 98 miles per hour at

the point of impact, and (3) the victims' car was launched some 219 feet from the point of impact, effectively crushing both victims, it is not clear that the data provided by the SDM/EDR was even the most damaging evidence introduced at trial. (D.E. No. 11 at 17).

Magistrate Judge Torres' Report and Recomendation goes on to consider and recommend rejecting the remaining grounds of the ineffective assistance portion of the Petition. This Court likewise, after an independent review, rejects the claims of ineffective assistance of counsel which include (1) failure to call mechanic as a witness (once again overstating the impact of the SDM/EDR evidence);(2) failure to pursue reasonable legal defense with respect to the "black box" evidence (trial counsel vehemently objected to the introduction of the subject evidence); (3) failure to challenge manslaughter charges (refuted by the record); and (4) incomplete jury instruction (Petitioner claims trial counsel should have requested a justifiable homicide and excusable neglect instruction, however the facts of the case supported neither). (D.E. No. 24 at 23-26).

### *Discovery Violations*

The ineffective assistance of counsel claims alleging that trial counsel's apparent discovery violations prejudiced Petitioner are loosely related. Ground 2 of the Petitioner's ineffective assistance of counsel claim charges that "defense counsel rendered ineffective assistance of counsel in failing to provide reciprocal discovery of documents which would have established that Matos' automobile had been modified." (D.E. No. 6 at 19) In Ground 3, Petitioner argues that counsel was ineffective in presenting the defense's sole expert witness, noting that a defense discovery violation precluded crucial SDM/EDR evidence from being introduced at trial. (D.E. No. 6 at 21)

The violation alluded to by Petitioner is recounted as follows:

Because of a defense discovery violation, crucial evidence was precluded from introduction; and counsel's attempts to elicit evidence on the modifications made to the automobile were not supported as they should have been by this evidence.
This precluded information was crucial in that its careful review established that the modifications impacted on the readings registered by the Black box.
Mr. Matos was doubly prejudiced when his lawyer misrepresented to the trial

> court that he had turned over the materials which he wished to introduce into evidence. The State conclusively refuted that assertion. Mr. Matos was prejudiced not only by the omission of the evidence as a component of the expert's opinion, but also because counsel was found to have committed a prejudicial discovery violation which precluded introduction of the evidence....

(D.E. No. 6 at 21-22). The majority of Petitioner's qualms regarding trial counsel's performance involve little more than second guessing trial strategy and tactics. This instance of trial counsel's conduct is as close as Petitioner comes to satisfying the "performance" prong of *Strickland*. It is doubtful, however, that trial counsel's performance, as a whole, fell below constitutional standards. Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.2d 384, 386 (11th Cir. 1994). Under the decisions interpreting Strickland, review of counsel's conduct is to be highly deferential, *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight.")

However, as Magistrate Judge Torres concludes, even if the Petitioner were able to establish that counsel's failure to introduce evidence on the modifications made to Petitioner's vehicle fell below an objective standard of reasonableness, he has not demonstrated the prejudice required under *Strickland*. Although framed in the context of counsel's "discovery violation," Petitioner is once again targeting the credibility and admissibility of the SDM/EDR reading itself, arguing that, but for counsel's failure to introduce evidence that would have undermined the accuracy of this data, the outcome of the trial would have been different. However, Petitioner once again fails to address the rest of the compelling evidence the state introduced with respect to Petitioner's driving at the time of the accident. An overwhelming amount of physical evidence demonstrated that Matos was driving his Trans-Am at an excessive rate of speed under the circumstances. As the Report and Recommendation concludes, Ground 2 of Matos'

ineffective assistance arguments fails the second prong of the *Strickland* test because he does not prove that the outcome of the proceeding would have been any different. (D.E. No. 24 at 22).

The Ground 3 claim is also centered squarely upon the SDM/EDR readings. To satisfy *Strickland*'s prejudice prong, Petitioner must demonstrate that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 690. In Ground 3, the Petitioner argues that his ability to present "crucial evidence" regarding the technical modifications to his vehicle was further prejudiced by counsel's mistake. (D.E. No. 6 at 21). Although it is difficult to ascertain from the Petition exactly what evidence was not presented as a result of the discovery violation, there is no indication that further discrediting the SDM/EDR's accuracy with respect to Petitioner's vehicle would have changed the outcome of the trial. (D.E. No. 24 at 22). Based on Petitioner's expert testimony, the jury could easily have discounted the computer evidence and relied simply upon the extent of the physical damage, the time of night when Petitioner was racing down the street as all the witnesses testified and the extent of the physical injuries to the victims as compelling and persuasive evidence of recklessness. Therefore, Matos fails the second prong of the *Strickland* test because he does not prove that the outcome of the proceeding would have been any different. *Id.*

## CONCLUSION

Magistrate Judge Torres' analysis of this Petition is thorough and well-reasoned. Although Petitioner's trial involved a then-novel evidentiary question, the weight of non-"black box" evidence such as eyewitness accounts, expert testimony, accident reconstruction and the extensive damage done to both the vehicles and victims demonstrates that Petitioner was driving at a reckless rate of speed when he plowed into the victims' vehicle. Again, the majority of Petitioner's argument focuses on but one piece of evidence: the SDM/EDR data suggesting that Petitioner was driving at a speed of 100 - 114 miles per hour. The admission of that data was, without question, damaging. However, while this evidence was likely given some weight by the jury, Magistrate Judge Torres' rightly concludes that the Petitioner has

failed to show that the result of the proceeding would have been altogether different if trial counsel had been able to further discredit, or even exclude, the "black box" evidence.

Accordingly it is

**ADJUDGED** that

(1) Petitioner's Objections (D.E. Nos. 30, 30-1 and 32) are **OVERULED**.

(2) Magistrate Judge Torres' Report and Recommendation (D.E. No. 24) is **AFFIRMED** and **ADOPTED**.

(3) Petitioner Edwin Matos' Petition for Writ of Habeas Corpus (D.E. No. 1) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of January, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

United States Magistrate Judge Edwin G. Torres

Counsel of Record

Mary Catherine Bonner
Former Counsel of Record
207 SW 12th Court
Fort Lauderdale, FL 33315-1522

Edwin Matos
518122
Desoto Annex
Inmate Mail/Parcels
13617 SE Highway 70
Arcadia, FL 34266
*PRO SE*